U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JAN 2 3 2008

ROBERT H. SHEMWELL, CLERK
BY _____
         DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| UNITED STATES OF AMERICA | CRIMINAL NO. 06-10007/01 |
|---|---|
| -vs- | JUDGE DRELL |
| JAMES ELLIS ASHFORD | MAGISTRATE JUDGE KIRK |

### RULING

Before the Court is a Motion to Dismiss Indictment for Speedy Trial Violation filed by defendant, James Ellis Ashford. (Document No. 58.) The Government has opposed the motion (Document No. 67), and an evidentiary hearing was held on January 22, 2008. For the reasons that follow, the motion will be GRANTED, and the Indictment will be DISMISSED WITHOUT PREJUDICE.

**BACKGROUND**

On March 23, 2006 an indictment was filed in the Western District of Louisiana charging James Ellis Ashford with one count of theft of government funds under 18 U.S.C. § 641 and two counts of mail fraud under 18 U.S.C. § 1341 in connection with an alleged scheme to obtain federal disaster assistance funds to which he was not entitled. (Document No. 2.) Mr. Ashford's initial appearance before Magistrate Judge James D. Kirk took place in Alexandria, Louisiana on

March 27, 2006, at which time the defendant was released on an unsecured bond and the Federal Public Defender's Office was appointed to represent him. (Documents No. 6 and 7.) On April 26, 2006, Defendant appeared with his counsel, Mr. Robert M. Marin, before Magistrate Judge Kirk and entered pleas of "not guilty" to all counts. (Document No. 13.) Subsequently, on May 9, 2006, Mr. Ashford signed a document titled "Waiver of Speedy Trial Act Rights," in which he acknowledged that he had been informed of and understood his rights to a speedy trial and specifically waived those rights. (Document No. 16.)

During the January 22, 2008 hearing on the instant motion, Mr. Marin, who has subsequently retired from the practice of law (Mr. Ashford is now represented by Mr. Wayne Blanchard, another court-appointed attorney), testified that his office prepared the "Waiver of Speedy Trial Act Rights" mentioned above. Mr. Marin further explained he did not file a motion to interrupt the speedy trial delays, "probably because" in May 2006, he and the United States Attorney were looking into the possibility that Mr. Ashford would cooperate concerning another ongoing investigation. This cooperation could have led to a plea agreement of some type. In the end, however, no actual debriefing meeting ever took place.

The next documents filed in the record were a Petition for Action on Conditions of Pretrial Release, an Order allowing the filing of that Petition, and a warrant for Mr. Ashford's arrest, all dated August 8, 2006. (Documents No. 18 and 19.) The Petition alleges Defendant violated the conditions of Pretrial Release

imposed by Magistrate Judge Kirk on March 27, 2006 when Mr. Ashford was arrested on May 25, May 28, and July 3, 2006; left the Western District of Louisiana without prior notification and approval on May 26, 2006; changed his residence without proper notification or approval on June 19, 2006; and failed to notify his pretrial services officer within seventy-two hours of his May 28, 2006 arrest.

No further filings were made until October 6, 2006, at which time the United States submitted a Motion for Trial Setting, explaining Mr. Ashford had been arrested August 2, 2006 on a warrant from the Eastern District of Louisiana regarding a petition to revoke Defendant's supervised release in that court. According to the motion, Mr. Ashford had been placed on supervised release in the Eastern District beginning September 13, 2005 after he was convicted of armed robbery of a postal carrier. (Document No. 20.) This Court granted the Motion for Trial Setting on October 10, 2006 and set an October 16, 2006 telephone conference among all counsel and the Court for identification of a trial date. (Document No. 21.) By Minute Entry dated October 17, 2006, the Court documented the trial date of March 22, 2007, as agreed upon by counsel for the United States and counsel for Mr. Ashford (Robert Marin) during the telephone conference.[1]

---

[1] This telephone conference was conducted pursuant to the, until now, usual practice of this judge to discuss open trial dates and counsel's availability to try such cases on specific dates. The Court's understanding was that the agreed date presented no speedy trial objection, particularly considering the "waiver" of record and the knowledge of Mr. Ashford's counsel.

The parties made no additional filings for more than three months. Then, on February 1, 2007, a little more than six weeks before the trial date, Mr. Ashford submitted two *pro se* filings: a "Motion to Proceed Pro'Se (sic) and Move Counsel to Amicus," in which he asserted he had a conflict of interest with his court-appointed counsel (Document No. 23); and a "Motion to Dismiss Indictment," alleging, in part, a violation of Defendant's right to a speedy trial under the Sixth Amendment and Zedner v. United States, 547 U.S. 489 (2006). (Document No. 24.) The United States then filed a "Motion for Speedy Trial Finding" on February 3, 2007, summarizing the factual bases supporting the March 22, 2007 trial setting. (Document No. 25.)

By Order dated February 22, 2007, this Court outlined, in detail, and with specific reference to the requirements of 18 U.S.C. § 3161 and Zedner, why the delays up to that point (which arose from attempts by Defendant's counsel and the Government to negotiate an agreement for Defendant to cooperate in another investigation and from Defendant's inability to confer adequately with his attorney after he was removed from the Western District of Louisiana in August 2006) did not run afoul of the Speedy Trial Act. (Document No. 29.) In light of those same reasons, the Court denied Defendant's Motion to Dismiss Indictment. (Document No. 27.)

The February 22, 2007 Order also explained that the March 22, 2007 trial date was continued to April 23, 2007 "in order to facilitate proper consideration

of the accused's motion to represent himself," which motion was set for hearing on March 21, 2007 before Magistrate Judge Kirk. (Documents No. 29 and 30.)

Neither Defendant nor his counsel sought reconsideration of the February 22, 2007 Order or the denial of the Motion to Dismiss Indictment.

Following the March 21, 2007 hearing, Magistrate Judge Kirk issued a Report and Recommendation concluding Mr. Ashford should be allowed to represent himself. (Document No. 31.) On March 26, 2007, during the period allowed for objections to the Report and Recommendation, Mr. Marin filed a Motion for Consideration of Mental Health Examination, in which he outlined certain troubling behavior Mr. Ashford exhibited during the hearing on March 21. (Document No. 33.) Specifically, Mr. Marin noted that Defendant:

> [M]entioned that he 'heard voices,' that he 'took medication for things but that [he] wasn't crazy,' mentioned that he was schizophrenic, and that he was currently taking the medications Depakote and Haldol (sp?). Further, Ashford appeared paranoid and agitated throughout the hearing, insisting that the magistrate judge read the [G]overnment's plea offer.

(Document No. 33, ¶ 5.)

In response to the motion, Magistrate Judge Kirk issued an Order dated March 27, 2007 requiring Mr. Marin to provide Defendant's mental health records to the Court on or before April 9, 2007. (Document No. 34.) By Order dated April 12, 2007, the April 23, 2007 trial was continued without date pending receipt and evaluation of information regarding Defendant's mental status. (Document No. 39).

Another hearing was held on April 24, 2007 before Magistrate Judge Kirk concerning a request to revoke Defendant's bond on the indictment at issue, but the substance of those charges was held in abeyance in light of the pending request for mental health evaluation. (Document No. 43.) By Order dated April 25, 2007, Magistrate Judge Kirk instructed that Defendant be committed to the custody of the Attorney General for forty-five days for the purpose of conducting a psychiatric examination as allowed by law; that the examination and report be completed and submitted to the Court on or before June 8, 2007; and that Defendant be returned to the jurisdiction of the Court on or before June 8, 2007. (Document No. 44.)

By letter dated June 7, 2007, the Court was advised by the warden of the Metropolitan Detention Center in Los Angeles, California, where Mr. Ashford had been sent for psychiatric evaluation regarding his competency to stand trial, that, secondary to a high volume of forensic cases, Mr. Ashford's examination would be delayed until August 8, 2007, and a report would issue on or before August 17, 2007. (Document No. 45.)

Despite these assurances, no further communication was received from the Federal Bureau of Prisons regarding Mr. Ashford's status until October 3, 2007, at which time the psychiatric report, dated October 2, 2007 was forwarded, *via facsimile,* to Magistrate Judge Kirk. (Document No. 47.)

A hearing was then set on the next available date, November 19, 2007, at which time Mr. Ashford was found competent to stand trial and assist in his defense. (Documents No. 52 and 53.) Also, on that date, a status conference was held with all counsel (including Mr. Blanchard, Defendant's newly appointed attorney), and the trial date of January 29, 2008 was selected in order to accommodate the existing trial calendars of the Court, the Assistant United States Attorney, and counsel for Defendant. (Documents No. 54 and 55.)

To the Court's recollection, no speedy trial issues were raised by either counsel during the November 19, 2007 status conference at which the trial date was selected, and no contemporaneous objections were made by the attorneys to the January 29, 2008 trial setting.[2] Rather, Defendant waited approximately six weeks, until January 4, 2008, to raise the issue in the motion currently before the Court. During that period, the Clerk of Court undertook proceedings to summon a jury for the January 29 date, and both judges in this division were unable to schedule other matters on the dates reserved for this trial. Additionally, it is the understanding of the Court that, secondary to unavoidable conflicts in the schedule of Ms. Bushnell, the Assistant United States Attorney who has handled this case from its inception, a different Assistant United States Attorney has been assigned to the matter and has filed proposed voir dire, jury instructions, and a list of foreseeable issues in preparation for the trial. (Documents No. 64 - 66.)

---

[2] Indeed, a significant factor in the joint selection of January 29, 2008 was the accommodation of defense counsel's schedule.

**APPLICABLE LAW**

18 U.S.C. § 3161(c)(1) provides, in pertinent part:

In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

Because Mr. Ashford first appeared before a judicial officer on March 27, 2006 concerning the March 23, 2006 indictment, the seventy-day period would have run on June 5, 2006, unless some period of delay properly excludable from computation of the time period were present.

Under 18 U.S.C. § 3161(h):

The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:

> (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to –
>
> > (A) delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant;
> >
> > * * *
> >
> > (F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of

8

                the hearing on, or other prompt disposition of, such motion;

* * *

    (H)    delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable;

    (I)    delay resulting from consideration by the court of a proposed plea agreement to be entered into by the defendant and the attorney for the Government; and

    (J)    delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

* * *

(8)    (A)    Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice

9

> served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

Justice Alito, writing for the Court in <u>Zedner v. United States</u>, 547 U.S. 489 (2006), explained that the periods of excludable delays outlined above were placed in the Speedy Trial Act, because "criminal cases vary widely and . . . there are valid reasons for greater delay in particular cases." <u>Id.</u> at ___.

<u>The Original Delay through March 22, 2007</u>

The first period of delay of which Defendant complains is that related to the original trial setting of March 22, 2007. As detailed above, the reasons for that delay were clearly and adequately explained in this Court's February 22, 2007 Order. Defendant now complains the Order was inadequate, because it was not entered until well after the original seventy-day period had run. The Supreme Court has found, however, that a district judge may enter of record his reasons supporting an "ends of justice" continuance under 18 U.S.C. § 3161(h)(8)(A) "by

the time a district court rules on a defendant's motion to dismiss under § 3162(a)(2)." Zedner, 547 U.S. at ___. This procedure was followed in the instant case, and the Court sees no reason to vacate its previous findings.

The Court also notes the applicability of 18 U.S.C. § 3161(h)(1) to the original delay in this case, because numerous other proceedings involving the defendant were occurring, including his multiple arrests beginning in May 2006, and the revocation of his supervised release in the Eastern District of Louisiana, as described above.

The March 22, 2007 through April 23, 2007 Delay

The Court finds the one-month delay ordered on February 22, 2007 was properly and contemporaneously explained as excludable under 18 U.S.C. § 3161(h)(1)(F), which excludes any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on or other prompt disposition of, such motion," and § 3161(h)(1)(J), which excludes the "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court."

The April 23, 2007 through January 29, 2008 Delay

It is apparent from a detailed review of the record in this matter that all counsel and the Court were following the appropriate law and procedures to guarantee Mr. Ashford's erratic behavior and admitted mental health issues, for

11

which he was being treated with medication, did not compromise his ability to understand the proceedings against him and participate in his own defense. However, it is equally clear, in hindsight, that the unexplained forty-seven-day delay between August 17, 2007 (the date the psychiatric report was promised to the Court) and October 3, 2007 (the date the report was actually delivered) was unreasonable and should not qualify as an excludable delay for proceedings or examinations related to a defendant's mental competency under 18 U.S.C. § 3161(h)(1)(A). The Court finds all other periods related to this examination, however, to be reasonable and properly excluded under § 3161(h)(1)(A).

As outlined above, the record shows Mr. Ashford was found competent to stand trial on November 19, 2007, following a full hearing. (Document No. 53.) Subtracting the forty-seven-day delay the Court has found to be unreasonable from the seventy days mandated by the Speedy Trial Act, the Court should have insisted the trial occur within twenty-three days – or by December 12, 2007, at the latest.

> 18 U.S.C. § 3162(a)(2) provides, in pertinent part:
>
> If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant. . . . In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

Thus, in the captioned matter, dismissal of the indictment is the mandated remedy, and it is now incumbent upon the Court to decide whether such dismissal will be with or without prejudice.  Contrary to Mr. Blanchard's argument, the fact that the calculations provided by the United States Sentencing Guidelines in this case might be applicable, does not denigrate the seriousness of the offense, a point made by the Government when highlighting the statutory maximum.  It would be improper at this juncture to assume a particular sentence would be imposed.  Therefore the notion that the Guidelines say anything (one way or the other) is not appropriately considered.

Next, regarding the facts and circumstances leading to the dismissal, the Government suggests that its good faith or bad faith is a factor to be considered in deciding whether to dismiss this indictment with or without prejudice.  For all the reasons explained in detail above, this case involves, at best, an inadvertent violation of the Speedy Trial Act secondary to the Court's attempts to work with the attorneys to select a mutually convenient trial date.  The Court does not find that the delays related to improper conduct of any kind on the part of the Government.

Finally, the Court finds that, although reprosecution will require the matters of reindictment and several hearings, the underlying facts of the case do not appear complicated.  Therefore, the impact upon the system is *de minimis*. The Court notes, likewise, there would be virtually no prejudice to the defendant,

because: first, he will receive full credit for time served in federal custody; and second, he is apparently still incarcerated elsewhere on unrelated charges.

Here, the Court must assume responsibility for this matter's not having been forced to trial on or before December 12, 2007. Dismissal without prejudice is the appropriate remedy.

**CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss Indictment for Speedy Trial Violation (Document No. 58) is GRANTED, and this matter is DISMISSED WITHOUT PREJUDICE.

SIGNED on this 23rd day of January, 2008, at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE